IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ANNETTE WICKLINE,

          Plaintiff,

v.                                                 CIVIL ACTION NO. 5:09-cv-00324

PENSION PLAN FOR EMPLOYEES OF THE
PROCESS ANALYTICS DIVISION OF ABB
AUTOMATION, INC. REPRESENTED BY THE
LABORERS INTERNATIONAL UNION OF
NORTH AMERICA, LOCAL NO. 1304, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the parties' cross-motions for summary judgment [Docket 21, 23] and their supporting memoranda.  After careful consideration, the Court denies Plaintiff's Motion for Summary Judgment, grants Defendants' Motion for Summary Judgment, and dismisses this matter from the Court's docket.

I.

Plaintiff worked for ABB Automation, Inc. ("ABB") as a Mechanical Assembler for twenty-two years.  As an employee of ABB, she participated in its pension plan ("Plan").  The portions of the Plan relevant to this case are those relating to disability benefits and appeal of the denial of such benefits.  The Plan's provision for Disability Retirement provides that an employee may be eligible for disability pension payments if she meets the following requirements:

> (a) [s]he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit;
> (b) after such total disability has continued for a period of twenty-six (26) consecutive weeks, and in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life; and
> (c) [s]he shall have filed a written application for such benefit.

(R. 115.) The Plan grants authority to a third party administrator to "see to the grant of such Pension benefits as are provided under the Plan." (R. 132.) The Plan sets forth the procedure for appealing an unfavorable decision on an application for disability benefits:

> The Participant shall be examined by a physician appointed for the purpose by the Plan Administrator and by a physician appointed for the purpose by a duly authorized representative of the Union. If they shall disagree concerning whether the Participant is permanently incapacitated, that question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the Participant and consultation with the other two physicians, shall decide such question. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

(R. 138.)

## II.

On January 27, 2006, Plaintiff applied for disability benefits through the Plan, asserting in her application that she became disabled due to a work injury on November 15, 1999. (R. 2.) She described the nature of her injury on her application as "Reflex sympathetic dystrophy, right upper extremity, bilateral carpal tunnel syndrome, chronic pain syndrome, experiencing chronic depression and anxiety as a result of my work related injury. I am currently receiving weekly therapeutic services to address these issues." (R. 1.) Plaintiff listed Rebecca Tanner Whitesell as her present attending physician and named fifteen other physicians who have attended to or prescribed for her injury. (R. 1.) Plaintiff included in her application several documents, including treatment notes from her physician, Dr. Whitesell, from 2000 to 2002, the August 19, 2003, decision from the Social

Security Administration awarding her Social Security disability benefits, and a decision from the Workers' Compensation Commission approving a request for medications by Blue Ridge Physical Medicine dated December 14, 2005. (R. 5 - 29.)

On May 15, 2006, Gail Wagaman, an administrator of the Plan, sent Plaintiff a letter informing her of the decision by third-party administrator Broadspire (now Aetna) that she did not satisfy the requirements of the Plan for disability benefits. (R. 33.) A copy of Broadspire's decision was attached. The decision was based on Plaintiff's application and medical records submitted along with her application. Broadspire noted Plaintiff's physical disability but found that the medical documentation failed to support a total disability from any sedentary job. (R. 31.) The decision went on to discuss Plaintiff's depression. It stated that the documents submitted contained no examples of Plaintiff's behavior or measurements of her cognitive functioning to support a psychological disorder. (R. 31.) Broadspire further stated that the records regarding Plaintiff's depression dated back to 2002, and there were no findings to support that she currently had psychological impairments. (R. 31.)

A Peer Review evaluation form filled out by reviewing physicians for Broadspire on April 21, 2006, indicate that the reviewing physicians reviewed and considered the following information with respect to Plaintiff's claim:

- Pension Application, 1/27/06
- Attending Physician's Statement for Pension, 1/24/06
- Workers' Compensation authorization decision, 12/5/05
- 5/10/02, Letter from Dr. Rebecca Whitesell
- Follow up notes from Blue Ridge Physical Medicine: 3/28/02, 1/24/02, 1/14/02, 12/10/01
- Follow up note from Dr. Rebecca Whitesell: 11/12/01, 9/27/01, 6/28/01, 1/25/01, 12/4/00, 10/9/00
- SSDI Fully Favorable Decision, 8/19/03
- SSDI Procedural History & Evaluation of Evidence

      - SSDI Award Letter, 10/28/03

(R. 47.)  The reviewing physicians noted on the Peer Review form that "Other than the claimant having a problem with her right arm there are no functional impairments that would preclude her from doing a sedentary job." (R.48.)  Ms. Wagaman's letter to Plaintiff provided the guidelines for appealing that decision.  (R. 33.)  On May 22, 2006, Plaintiff sent a letter to ABB's Human Resources department advising of her intent to appeal.  (R. 34.)

      On September 11, 2006, Ms. Wagaman sent Plaintiff a letter notifying her of her appointment scheduled for September 27, 2006, with a physician appointed by the Plan administrator pursuant to the Plan's appeal procedure, and reminding her to contact the Union to schedule an appointment with the Union-appointed physician. (R. 35.)  Plaintiff responded that she would be unable to make the scheduled appointment due to carpal tunnel surgery she was scheduled for on September 25, 2006.  (R. 39.)  Ms. Wagaman wrote Plaintiff on November 1, 2006, notifying her of an appointment with a physician rescheduled for November 6, 2006.  (R. 39.)  Plaintiff did not appear for this appointment.  (Def.'s Mot. Summ. J. 4.)  On November 13, 2006, Plaintiff's counsel sent a notice of representation to Broadspire and Ms. Wagaman, requesting copies of the Plan and the administrative record.  (R. 40-42.)  Michael Scarpa, another ABB administrator, responded to Plaintiff's counsel on December 13, 2006, with  a summary of the procedural history of Plaintiff's claim.  (R. 43.)  Mr. Scarpa informed Plaintiff's counsel that Plaintiff had yet to appear for her appointment with the appointed physician for the purpose of completing the appeals process. (R. 43.)  He stated that he was willing to reschedule her appointment so that the Plan administrators could collect objective information regarding Plaintiff's alleged disability and make a decision on her appeal.  He further stated, "However, if she chooses not to participate in the medical

4

appointment(s) we will then be required to complete the 2nd level appeal review with the information that we have on record." (R. 43.)   Mr. Scarpa closed the letter by saying, "I hope this background information has been helpful.  If I do not hear from you by January 5, 2007, I will assume that Mrs. Wickline is not interested in supplying any additional information and we will proceed as indicated above." (R. 43.)   Plaintiff filed this lawsuit on March 31, 2009, before completing her appeal.

 This case was stayed on July 15, 2009, pending exhaustion of the appeals process.  Plaintiff saw Dr. Richard Wilson, a physician appointed by the Plan administrator, on October 29, 2009, for her Independent Medical Evaluation ("IME") pursuant to the Plan's appeal process. At her appointment with Dr. Wilson, Plaintiff provided medical records for his review dating from 1991 to 2003.  Dr. Wilson noted, "This information was briefly reviewed.  After I discovered that none of the information provided was contemporary to this evaluation, it is my opinion that none of this information is germane to this evaluation today.  My evaluation is in regard to Ms. Wickline's current condition, not her past condition."  (R. 59.)

In his evaluation, Dr. Wilson wrote that Plaintiff reported her primary problem was right upper extremity pain and difficulty bending her right arm.  (R. 60.)  She attributed this to nerve damage and her diagnosis of reflex sympathetic dystrophy.  (R. 60.)  Dr. Wilson conducted a physical evaluation of Plaintiff and concluded as follows:

> This is a relatively normal physical examination for a lady of her stated age.  Her findings are consistent with rotational scoliosis and disuse related range of motion limitations to the right upper extremity.  There is no neurological explanation for her presentation.  There is no indication of the existence of significant ongoing carpal tunnel syndrome or objective findings consistent with the diagnosis of complex regional pain syndrom as cited above.

5

(R. 65.) His ultimate conclusion was that Plaintiff, in her current condition, is capable to perform physically at the sedentary and light duty levels. (R. 69.) In a letter dated February 12, 2010, the parties informed this Court that they agreed that Plaintiff exhausted her administrative remedies, without her ever completing the second or third prongs of the appeals process: an examination by a Union-appointed physician and the reconciliation of the two physician's opinions, if opposing, by a third physician. (R. 72.)

### III.

The well-established standard in consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008).

The Court will generally review a decision made by an administrator of an ERISA benefit plan de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Richards v. UMWA Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1989); *de*

*Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989). However, where the plan gives the administrator discretion to determine benefit eligibility or to construe plan terms, the standard of review is whether the administrator abused its discretion. *Firestone*, 489 U.S. at 111; *Stup v. Unum Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir.2004); *Bynum*, 287 F.3d at 311. The Plan in this case confers the duties of administrator upon a third-party administrator who is charged with determining eligibility for benefits under the Plan. (R. 132.) Thus, the Court reviews the administrator's decision for abuse of discretion.

Under this standard, a plan administrator's decision "will not be disturbed if it is reasonable, even if the reviewing court would have come to a different conclusion independently." *Smith v. Continental Cas. Co.*, 369 F.3d 412, 417 (4th Cir.2004). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997) (internal quotation marks omitted).

The Court notes that it is the claimant's burden to demonstrate entitlement to benefits under the plan. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 (4th Cir.2002). Given that the only evidence before the Plan administrator on appeal was Plaintiff's original application and the report of Dr. Wilson's physical examination and evaluation of Plaintiff and his review of the medical records she provided him, the question before the Court is whether it was reasonable to deny Plaintiff's application based on that evidence.

The Court of Appeals for the Fourth Circuit in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir.2000), set forth eight nonexclusive factors that courts should consider in reviewing the reasonableness of a plan administrator's decision. The factors are:

(1) the language of the plan;

7

    (2) the purposes and goals of the plan;

    (3) the adequacy of the materials considered to make the decision and the degree to which they support it;

    (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan;

    (5) whether the decisionmaking process was reasoned and principled;

    (6) whether the decision was consistent with the procedural and substantive requirements of ERISA;

    (7) any external standard relevant to the exercise of discretion; and

    (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43. The Court will use these factors in its review for abuse of discretion. See *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010).

IV.

The Court now turns to Plaintiff's arguments. Plaintiff makes much of the fact that the record relied upon by Defendants is insufficient, stating that "The Plaintiff's complete History of Disability cannot be fully documented in this case because the Defendants did a particularly poor job of submitting the relevant medical records into the Administrative Record," and "With this paucity of evidence, no wonder the Defendants found that the Plaintiff was not disabled."[1] (Pl.'s

---

[1] This is unfortunately the first of multiple instances of Plaintiff's counsel's disrespect toward opposing counsel in the briefing. Counsel is reminded that the lack of civility in his arguments does nothing to improve his representation of his client. *See* W. Va. Standards of Professional Conduct, Standards I.A.1. ("A lawyer should treat all counsel, . . . in a civil and courteous manner, not only in court, but also in all other written and oral communications. A lawyer should not, even when called upon by a client to do so, abuse or indulge in offensive conduct, disparaging personal remarks
(continued...)

Mem. 2, 3.) After accusing Defendants of making a "calculated decision to exclude relevant medical records from the Administrative Record," Plaintiff provides a summary of the evidence relied upon by the administrative law judge in awarding her Social Security disability benefits. (Pl.'s Mem. 3-9.)

She appears to protest the Plan's appeal procedures, complaining that she was not provided with a means of submitting evidence to overturn her denial. (Pl.'s Mem. 20.) First, the Plan does not guarantee participants the opportunity to submit evidence on appeal, rather it vests the appeal decision with physicians conducting IMEs. The Plan administrator was under no obligation to consider supplemental medical records. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999) ("Remand is most appropriate 'where the plan itself commits the trustees to consider relevant information which they failed to consider or where [the] decision involves records that were readily available and records that trustees had agreed that they would verify.'"). Secondly, Plaintiff did submit supplemental records at her appointment with Dr. Wilson, which he reviewed and found not to be relevant to his current evaluation as they were all dated at least six years prior to the exam. These records are not included in the administrative record, but it appears from Dr. Wilson's notes that there were no supplemental records dated past the date of her Social Security disability award, August 19, 2003. Plaintiff has not identified any specific medical records that are not in the administrative record that would be relevant (in date and in subject matter) to the Plan's

---

[1](...continued)
or acrimony toward other counsel, parties or witnesses."), I.A.3 ("A lawyer should not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety."). The Court also expresses its distaste for Plaintiff's counsel's repeated use of the term "retarded" in describing his client.

determination of her eligibility for a disability, nor has she sought leave from the Court to supplement the record.

Plaintiff also asserts that, in violation of federal statutes, she was never given an explanation of Broadspire's denial of her disability benefits application. (Pl.'s Mem. 11.) However, it is clear from the denial letter sent to Plaintiff by Ms. Wagaman that the letter detailing Broadspire's decision was attached in that mailing. Defendants make this point in their response to Plaintiff's motion for summary judgment, but Plaintiff does not refute this in her reply. The Court is, therefore, left to assume that this contention was a misrepresentation by Plaintiff's counsel.

Plaintiff further complains that the Plan's appeal process was not followed. She states, "Not only was the Plaintiff prohibited from reviewing the reason for her denial and from submitting evidence to rebut it, but also the Plan's multiple IME format was never adhered to." (Pl.'s Mem. 11.) It is the Court's understanding that this process was not adhered to because Plaintiff, after failing to show up for two appointments scheduled by the Plan administrator, did not, in over three years time, arrange for an independent evaluation by a physician appointed by the Union. She filed this lawsuit before taking advantage of what would have been, presumably, the phase of the appeals process most favorable to her, and now she complains that the appeals process was not adhered to. It is the Court's finding that any failure to adhere to the appeals process was the fault of Plaintiff or her counsel in simply neglecting to uphold her obligations under the process, prematurely filing this lawsuit and stipulating to the exhaustion of her appellate remedies without submitting to a second or third IME. This is true even though the Court granted a stay which would have allowed for the completion of those evaluations. Any assertion that the Plan administrator lacked evidence in making its determination cannot be seriously considered without acknowledging the fact that

Plaintiff went out of her way to ensure that Dr. Wilson's evaluation was the only contemporary evidence upon which the decision could be made.

Plaintiff next argues that her award of Social Security disability benefits is conclusive evidence that she is disabled under the Plan's definition. (Pl.'s Mem. 13.) As our court of appeals has repeatedly held, the weight to be given a favorable Social Security decision depends on whether the Plan's definition of disability is analogous to that given by the Social Security Administration. The Social Security Act defines disability as "inability to do any substantial gainful activity by reason of any medically determinable physical or medical impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The Plan's definition requires that Plaintiff "has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit" and provides that "after such total disability has continued for a period of twenty-six (26) consecutive weeks, and in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life." (R. 115.)

Plaintiff cites *Hines v. Unum Life Ins. Co. of America*, 110 F.Supp.2d. 458 (W.D. Va. 2000). In *Hines*, which is not binding authority for this Court, the district court for the Western District of Virginia noted that Unum Life Insurance was not bound by the favorable Social Security decision, but that the Unum Plan's and the Social Security Act's definitions were similar enough so that Unum should have at least considered the Social Security Administration's findings. *Hines*, 110 F.Supp.2d at 468. The Unum Plan provided, in part, that "a person is disabled when [she is] 'limited from performing the material and substantial duties of [her] regular occupation due to sickness and injury.'" *Id.* Plaintiff, however, characterizes the Unum Plan as follows, "It is beyond question that

11

the definitions of disability in the Unum policy in *Hines* and the Plan are essentially the same, as they both contain an 'any occupation' definition of disability." This is a blatant mischaracterization of the caselaw.

The Court finds that the Plan's requirements for disability are not similar to the SSA definition because the SSA definition only requires a disability to last at least twelve months, while the Plan requires a continuous disability for twenty-six weeks *and* the opinion of a qualified physician that the disability will be permanent. Plaintiff was awarded Social Security disability benefits in 2003. It is completely within the bounds of the Plan's definition that she would be found to be disabled by the Social Security Administration for at least twelve months in 2003, but not found to be permanently disabled by the Plan administrator in 2006.[2]

This brings the Court to Plaintiff's next argument, made in her reply. The reconciliation of the two definitions of disability above is completely beyond Plaintiff, who describes that position as "ludicrous." (Pl.'s Rep. 1.) Contending that there is no way that Plaintiff could be disabled from gainful activity in 2003 but found to not be permanently impaired from any occupation in 2006 she states, "This conclusion defies all logic and human experience. People, especially unhealthy people, do not become more healthy as they age. In fact, as we all know, they tend to deteriorate as they age." (Pl.'s Rep. 1-2.) The Court is sympathetic to Plaintiff's dire outlook on recovery, but notes that, fortunately, doctors, therapists and other medical professionals regularly provide services beyond that of evaluating an individual for a permanent disability, and are constantly improving

---

[2]Moreover, there is evidence in the record that Plaintiff's Social Security award was considered by the physicians conducting a peer review of Plaintiff's claim. (R. 53.)

peoples' conditions with ever-advancing treatment and medication. It is not, therefore, a foregone conclusion that Plaintiff would be ill in 2003 with no hope of ever improving in health.

Finally, Plaintiff contends that the Plan administrator failed to consider her mental impairments. (Pl.'s Mem. 16.) She cites again to the decision awarding her Social Security benefits and asserts that she "tested, on two separate occasions, as mentally retarded." (Pl.'s Mem. 16.) She asserts that this finding was ignored by Defendants, but "is the true basis of [her] disability." (Pl.'s Mem. at 17.) Her argument is that her physical disability prevents her from engaging in any manual labor, but her diminished mental capacity inhibits her from engaging in sedentary work. (Pl.'s Mem. 18.) In response, Defendants assert that Plaintiff never identified her mental impairments as a basis for her disability during the claims process nor during her IME. (Def.'s Resp. 7.) Moreover, in Dr. Wilson's evaluation, he observed Plaintiff's mental state without prompting and concluded that there was no evidence that she was mentally unfit. (Def.'s Resp. 7.)

In her reply, Plaintiff contends that Defendants' argument with respect to her mental impairments is fatally flawed. (Pl.'s Rep. 2.) She states, "First, by testing, the Plaintiff is retarded. As such, she may not have known to raise her cognitive impairments as a disabling condition. Second, if the Plaintiff was consciously aware of her mental impairments, she may have been embarrassed to raise them." (Pl.'s Rep. 2.) At the risk of dignifying this argument, the Court will address the issue briefly.

Plaintiff was fully aware of the Social Security Administration decision and its reliance on her mental impairment at the time she filed her application for a disability pension. If this was an impairment that contributed to her inability to work under the Plan, as she claims her reflex sympathetic dystrophy and bilateral carpal tunnel syndrome were, she had an opportunity to assert

that claim. The Court does not accept that she was mentally incapable of doing so, as she now asserts, particularly since the only step of her claim process where she was not represented by counsel was her initial application. Second, on her application she asserts that she became disabled as a result of a work injury on November 15, 1999. There is no evidence that her mental impairments incapacitated her at any point in time, as required by the Plan.

V.

Not only has Plaintiff failed to meet her burden to obtain a grant of summary judgment, the Court finds that the evidence and the absence of evidence support the Plan Administrator's conclusion. There do not appear to be any medical records past 2003 to support Plaintiff's claim of disability. Plaintiff even admitted in her Reply that "Physically, the Plaintiff is probably capable of performing sedentary work." (Pl.'s Rep. 4.) After asserting numerous arguments regarding defective procedure, Plaintiff resigns to the one argument that her cognitive and emotional impairments disable her from any occupation. Plaintiff had several opportunities to assert her mental impairments as the basis for her disability. She could have done so in her initial application. She also could have done so at her IME with Dr. Wilson *at which time she was represented by counsel*. Significantly, she could have done so at two other independent medical evaluations in which she neglected to participate. To the extent she asserted her depression and anxiety as a basis for her disability, the Plan administrator considered those claims and found no evidence supporting them under the Plan's requirements for eligibility.

The Court agrees with Defendants that the Plan administrator's conclusion that Plaintiff is capable of sedentary work was based on substantial evidence in that Dr. Wilson came to that

conclusion after fully evaluating Plaintiff for the impairments she alleged. In making this determination, the Court considered the relevant factors in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000). The Court considered and discussed above the language of the Plan, the adequacy of the materials considered and whether federal ERISA statutes were violated by the claims process. As to whether the decision-making process was reasonable and principled, based on the information that the Plan administrator had at the time of its decision (Plaintiff's records that were submitted with her application, the physician peer review of her claim and Dr. Wilson's evaluation), the Court finds that it was. To the extent Plaintiff claims that the Plan administrator should have conducted an additional inquiry into her mental impairments, the Court notes that plan administrators are "under no duty to secure specific forms of evidence" to prove a claimant's claim. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608 (4th Cir.1999) (holding that plan administrator did not need to seek out additional evidence in the way of a vocational consultant to determine if Elliot could perform any jobs). The Fourth Circuit in *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228 (4th Cir.1997) stated that the entity interpreting the plan and determining eligibility "must treat each claimant with procedural fairness, but, because it must also guard against improper claims, it is not its duty to affirmatively aid claimants in proving their claims." *Id.* at 236. For the reasons stated above, the Court concludes that the Plan administrator did not abuse its discretion in denying Plaintiff's application for a disability pension.

Accordingly, the Court **ORDERS** that Plaintiff's Motion for Summary Judgment [Docket 23] be **DENIED**, that Defendant's Motion for Summary Judgment [Docket 21] be **GRANTED,** and that this matter be dismissed and stricken from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

                      ENTER:      April 12, 2011

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA